IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                                        No. 13-1012-03-JTM
                                              Civil No. 18-1171-JTM

ANTOINE BEASLEY,
    Defendant.

MEMORANDUM AND ORDER

The defendant and his criminal associates were convicted as a result of an extensive investigation by multiple federal agencies which began in late 2012. Officers obtained two court orders authorizing the interception of communications to a telephone number assigned to Gerald Beasley, and a number used by defendant Antoine Beasley. On June 12, 2013, various federal agencies, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) executed search warrants at houses and places of business in the Wichita, Kansas area.

Based on the results of these investigations and searches, the government charged Antoine Beasley in a Second Superseding Indictment (Dkt. 50) with drug and firearm offenses, bank fraud and bank fraud conspiracy offenses, program fraud, and money laundering. Beasley's counsel — like those of his co-defendants — actively and

vigorously defended his client against these charges. Counsel filed numerous motions to suppress evidence, including motions directly targeting evidence from the wiretaps and cellphones. (Dkt. 249, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 287). These motions were denied by the court, which in particular rejected the defendants' contentions that the wiretaps were invalid, determining instead that the warrants were facially valid and supported by probable cause. (Dkt. 390).

Following the denial of their pretrial motions, Beasley and his co-defendants chose to plead guilty to some of the charges against them. Beasley freely and voluntarily pled guilty to possessing a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and conspiracy to possess marijuana with intent to distribute. (Dkt. 559). Consistent with Beasley's plea agreement, the court sentenced the defendant to 63 months imprisonment.

The matter is before the court on the defendant's Motion to Vacate (Dkt. 640), which seeks to vacate his sentence by again attacking the wiretap evidence. In particular, he alleges he was prejudiced because his attorney was ineffective in failing to argue that the warrant was facially invalid, because it did not restrict the geographic range of the interception, that the warrant violated Section 2518(a)(b)(ii), and that the warrant was in effect a roving wiretap issued without proper authorization. The court denies defendant's motion for two independent reasons.

First, the defendant freely, voluntarily, and knowingly waived further arguments against his conviction when he agreed to plead guilty in exchange for the government's dismissal of most of the charges against him. Specifically, Beasley agreed:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release..

(Dkt. 486, ¶ 13).

Of course, as recognized in the Agreement and *Cockerham*, the general rule that the waiver of § 2255 rights may not apply where counsel has been constitutionally ineffective as defined in *Strickland v. Washington*, 466 U.S. 668 (1984) (right is violated if attorney's performance was deficient and fell below an objective standard of reasonableness, and if defendant shows he was prejudiced as a result). However, unlike *Cockerham*, the alleged deficiencies cited in his motion do not relate to the negotiation or entering of the plea agreement or the waiver of § 2255 rights. 237 F.3d at 1187. His arguments instead are wholly tangential to the final plea agreement and waiver, and simply present additional variations on why the wiretaps should not have been issued. As noted earlier, defendant's counsel actively and vigorously argued that the wiretaps were facially invalid and was denied relief.

Consistent with the court's usual practice, defendant was allowed to plead guilty only after an extended and careful colloquy, which ensured that the plea (and the associated waiver of § 2255 rights) was knowing and voluntary. The present arguments

relate to an entirely separate issue (a Fourth Amendment challenge) wholly unrelated to the decision to enter into the Plea Agreement. Coupled with the zealous and active efforts by defense counsel in seeking to exclude the wiretap evidence, the court finds that the waiver of collateral attack rights was free, knowing, and voluntary, and finds no reason it should not be enforced. *See United States v. Andrews*, 471 Fed.Appx. 824 (10th Cir. 2012).

Even if the waiver were not enforced, and the court considered the motion on the merits, the defendant would not be entitled to relief.

At its core, the defendant's motion springs from the Supreme Court decision in *Dahda v. United States*, 18 S.Ct. 1491 (2018). In that case, also arising from a Kansas-centered criminal investigation into a drug-trafficking operation, the court authorized the interception of communications for certain mobile phones belonging to defendants. The authorization included a provision that the subject telephones could be intercepted if they were "transported outside the territorial jurisdiction of the court." *Id*. at 1495. Communications with the three target telephones were largely made from a Kansas listening post, but in one instance the government intercepted a call to a telephone in California from a Missouri listening post.

This extended geographic authorization, as the parties and the Court recognized, was too broad, and the government omitted evidence obtained from the Missouri listening post. The defendants, however, argued that the failure to expressly restrict the geographic scope of the interception rendered the warrant facially invalid, such that all

4

evidence, even communications in Kansas and intercepted in Kansas, should be suppressed under 18 U.S.C. § 2518(10)(a)(ii). Both the district court (No. 12-20083-KHV) and the Tenth Circuit (852 F.3d 1282, 853 F.3d 1101) rejected defendant's arguments.

The Supreme Court determined that the Tenth Circuit's analysis, which held that the surplus language did not violate any of the "core concerns" of Congress in its adoption of § 2518, was erroneous. 138 S.Ct. at 1497-98. The Court held that the "core concerns" test, adopted from *United States v. Giordano*, 416 U.S. 505 (1974) was inappropriate, was not controlling where defendants alleged a violation of § 2518(10)(a)(ii) because the order was "insufficient on its face," as opposed to § 2518(10)(a)(i) (as in *Giordano*) where the challenge is to whether "the communication was unlawfully intercepted."

However, the Court still affirmed the defendants' convictions, because "[i]n our view, subparagraph (ii) does not cover each and every error that appears in an otherwise sufficient order." 1387 S.Ct. at 1498. Suppression was not required because the expansive geographic language in the warrant was surplusage which did not affect its facial validity:

> [T]he sentence itself is surplus. Its presence is not connected to any other relevant part of the Orders. Were we to remove the sentence from the Orders, they would then properly authorize wiretaps within the authorizing court's territorial jurisdiction. As we discussed above, a listening post within the court's territorial jurisdiction could lawfully intercept communications made to or from telephones located within Kansas or outside Kansas.

*Id*. at 1499.

Here, the warrant also includes a further provision:

> IT IS ORDERED FURTHER that in the event that the target facility is transferred outside the territorial jurisdiction of this court, interceptions may take place when the TARGET TELEPHONE is located in any other jurisdiction within the United States.

However, the defect does not render the warrant itself defective within the meaning of § 2518(10)(a). As in *Dahda*, 138 U.S. at 1499, the territorial jurisdiction of the District Judge issuing the Order of Authorization was explicitly noted (the "District of Kansas" and thus "presumptively limit[ed] to the issuing court's territorial jurisdiction."

The record does not indicate that any interception of a cell phone located outside of Kansas occurred through the means of a listening post outside of Kansas. The Order of Authorization is directed at cellular telephone numbers assigned to a Kansas area code (316) with a listed Kansas address (in the City of Andover), and the underlying affidavit recites the extensive Kansas criminal background of associates of the Beasley family, including the defendant.

Here, the Order addresses the core elements of a warrant as set forth in § 2518(4)(a)-(e). *See Dahda*, 138 S.Ct. at 149. And the court finds no basis for concluding that the Order was facially invalid or otherwise violated § 2518. The expansive geographic language is surplusage which does not justify excludling evidence, and (as this court previously held in denying defendant's motion for suppress), the Order was facially valid.

As noted earlier, the defendant argues that the Order violated § 2518(1)(b)(ii) because it did not explicitly mandate that the listening post be in Kansas, relying in particular on the decision of the Tenth Circuit in *United States v. Harpel*, 493 F.2d 346 (10th Cir. 1973) for his contention that "according to our circuit interceptions do not take place at any telephone." (Dkt. 663, at 7). That is, the warrant was defective because it did not explicitly provide that the listening be in Kansas.

But the cited 1973 case did not involve cell phones and does not create the explicit location requirement defendant claims. And, as noted earlier, *Dahda* itself expressly recognized under similar circumstances that a Kansas court "could lawfully intercept communications made to or from telephones located within Kansas or outside Kansas." 138 S.Ct. at 1499. *See also United States v. Bragg*, 2018 WL 3059618, * n. 7 (W.D. Okla., June 20, 2018) (following *Dahda* and holding that "Title III's territorial jurisdiction requirement is satisfied if either the wiretapped telephone or the government's listening post is located within the authorizing court's jurisdiction," with the result that "Defendant's speculation that some cell phones may have been located outside the Court's jurisdiction when communications were intercepted would not provide a basis to suppress the evidence").

Nor did the Order for Warrant create a "roving warrant" requiring the signature of a Deputy Assistant Attorney General, as asserted by the defendant. Defendant cites *United States v. Shannon*, 766 F.3d 346, 349 n. 4 (3rd Cir. 2014), but truncates the

7

definition, stating that a "roving wiretap is used to intercept wire communications."[1] Shannon explained that a "regular wiretap involves tapping a particular phone whereas a roving wiretap authorizes the government to, in effect, tap a person, *intercepting any and all identified telephones used by that person*." *Id*. (emphasis added, record citation and quotation omitted).

Here, the Application for Warrant was authorized on March 26, 2013 by the Deputy Assistant Attorney General of the Criminal Division of the Department of Justice. The authority to issue such warrants was authorized by Attorney General Eric Holder, Jr. pursuant to Order No. 3055-2009 issued on February 26, 2009. This was sufficient. The Order authorizing interception specifies particular telephones to be intercepted; it did not authorize the blanket interception of all electronic communications of the defendant. The court finds nothing in the Application which created any illegal or unauthorized warrant. This court has previously rejected a similar argument.

---

[1] Defendant also cites *United States v. Foy*, 641 F.3d 455 (10th Cir. 2011), *United States v. Nanfro*, 64 F.3d 98 (2nd Cir. 1995), and *United States v. Bianco*, 998 F.2d 1112 (2nd Cir. 1993) in support of his "roving wiretap" argument. *Foy* generally recognizes the need for executive branch authorization for a wiretap application, 641 F.3d at 462, but does not mention "roving wiretaps" or create some special or additional requirements for authorization applications for such wiretaps. There was no contention in *Foy* that the official who actually approved the wiretap lacked authority, and the court held that an inadvertent error in identifying the appointing authority was a mere technical defect which did not invalidate the warrant.

*Nanfro* and *Bianco* (the latter *overruled on other grounds*; *United States v. Apple*, 915 F.2d 899, 906–07 (4th Cir.1990) (defendant had standing to challenge wire-tapping)) similarly do not address "roving wiretaps," and address other issues. *Nanfro*, for example, ultimately addressed the sufficiency of an application which identified the authorizing official by title rather than by name.

> The [challenged] orders do not grant authority to wiretap multiple telephones; they simply recognize that a cell phone user can, as a means of thwarting an investigation, obtain a new phone number for a phone with a given ESN, or have his existing phone number assigned to a new cell phone with a different ESN. That the orders covered those possibilities did not turn them into general wiretap authority, because each was still limited to a narrow and particular target. Thus, the Court finds that the government neither sought authorization for nor executed a roving wiretap. As a result, the Court need not reach the question whether the wiretap orders satisfied the statutory requirements for a roving wiretap.
>
> The wiretap orders needed to satisfy the particularity requirements for standard wiretaps only, and the Court concludes that each one did. Each wiretap order provided a phone number, ESN, a particular description of the conversation to be intercepted, as well as the subscriber, primary user, and MSID of each target phone. The Court finds these descriptions sufficiently specified the nature and location of the facilities from which or the place where the communications are to be intercepted, thus satisfying the statutory prerequisites for a "standard" wiretap.

*United States v. Banks*, No. 13-40060-DDC, 2014 WL 5321075, *5 (D. Kan. Oct. 17, 2014) (citations and internal quotation omitted). *See also, e.g., United States v. Kozina*, 490 Fed.Appx. 9, 11 (9th Cir. 2012) (a wiretap order which permits "the interception of communications to and from an identified cell phone number … does not require higher-level Justice Department authorization"); *United States v. Goodwin*, 141 F.3d 394, 403 (2nd Cir. 1997) (finding similar argument "plainly incorrect").

The Order authorizing interception was validly issued. The defendant's present motion simply adds to the reasons why (in his view) evidence from the wiretaps should have been suppressed. The court determined, prior to his plea, that application for warrant was facially valid and based on probable case. The court finds that defendant's

counsel was not deficient in failing to raise these additional, but meritless, arguments against the warrants. Similarly, the defendant has failed his burden under *Strickland* to show prejudice. Even if counsel had raised these additional arguments, the result would have been no different.

Finally, as noted earlier, defendant's arguments with respect to the wiretaps do not touch on his free and voluntary decision to plead guilty, and thus were waived by his plea.

Finally, the court declines to issue a certificate of appealability, which may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Such a certificate may issue where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)). When a court's ruling is based on procedural grounds, a movant must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

The defendant has not met these standards; the defendant's present claims of ineffective assistance were waived by a voluntary and knowing plea agreement about issues wholly unrelated to the plea negotiations, and the underlying arguments against

the wiretaps are not supported by *Dahda* or other authority. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

IT IS ACCORDINGLY ORDERED this day of January, 2020, that the defendant's Motions to Vacate and for Certification (Dkt. 640, 663) are denied.

*J. Thomas Marten*
J. Thomas Marten, Judge